** PART II **
THERE IS ANOTHER SIMILAR TERM WHICH IS RELEVANT TO THIS ANALYSIS. THE UNIFORM COMMERCIAL CODE USES THE TERM "DEPOSITARY BANK". 12A O.S. 4-105(A). THIS STATUTE PROVIDES AS FOLLOWS:
 "A. DEPOSITARY BANK MEANS THE FIRST BANK TO WHICH AN ITEM IS TRANSFERRED FOR COLLECTION EVEN THOUGH IT IS ALSO THE PAYOR BANK . . . ."
THIS TERM IS RELEVANT BECAUSE THE DEPOSITARY BANK IS QUITE TYPICALLY WHERE BANK CUSTOMERS HAVE DEPOSITORY ACCOUNTS. IN POINT OF FACT SECTION 62 O.S. 71 SEEMS TO IMPLY THAT OFFICIAL DEPOSITORY BANKS AS DESIGNATED BY THE STATE TREASURER WILL BE DEPOSITARY BANKS FOR ITEMS COLLECTED BY STATE AGENCIES AS PAYMENT AND PRESENTED TO THE BANK. THIS SECTION PROVIDES AS FOLLOWS:
 "SUCH BANKS, SAVINGS BANKS OR SAVINGS AND LOAN ASSOCIATIONS AND CREDIT UNIONS SHALL BE IN GOOD STANDING IN CONDUCTING A REGULAR BANKING BUSINESS AND SHALL COLLECT AND SHALL COLLECT SUCH DRAFTS BILLS OF EXCHANGE. AND CHECKS AS MAY BE DEPOSITED BY THE STATE IN THE REGULAR COURSE OF BUSINESS . . . ."
THERE IS LITTLE QUESTION THAT UNDER THE CURRENT SYSTEM WHERE STATE AGENCIES ACCEPT CREDIT CARDS AS PAYMENT AND USE A PAPER CREDIT CARD SLIP TO EVIDENCE THE CHARGE AND THEREAFTER SUBMIT SUCH PAPER SLIP TO A BANK FOR ULTIMATE FINAL PAYMENT, SUCH ARRANGEMENTS CLEARLY FALL WITHIN THE STATE TREASURER'S JURISDICTION 62 O.S. 71(A). THIS IS SO BECAUSE THE CREDIT CARD SLIP ITSELF CONSTITUTES AN ITEM UNDER THE UNIFORM COMMERCIAL CODE, AND IS DEPOSITED AND PROCESSED ALMOST EXACTLY LIKE A CHECK. THE CODE DEFINES AN "ITEM" AS FOLLOWS:
 "(G) "ITEM" MEANS ANY INSTRUMENT FOR THE PAYMENT OF MONEY EVEN THOUGH IT IS NOT NEGOTIABLE BUT DOES NOT INCLUDE MONEY . . ." 12A O.S. 4-104(G)
THE SUPREME COURT OF MISSISSIPPI HAS SPECIFICALLY HELD THAT WHERE A MERCHANT DEPOSITS A CREDIT CARD SLIP WITH A MERCHANT BANK PURSUANT TO A CREDIT CARD AGREEMENT THAT THE SLIP IS AN ITEM UNDER THE CODE AND THE MERCHANT BANK IS A DEPOSITARY BANK UNDER THE CODE. FIRST UNITED BANK V. PHILMONT CORPORATION, 533 S.2D 449 (MISS. 1988). SPECIFICALLY THE COURT STATED AS FOLLOWS:
 "CREDIT CARD SALES SLIPS ARE NOT CHECKS, DRAFTS, OR OTHER NEGOTIABLE INSTRUMENTS AS DEFINED BY UCC ARTICLES 3 AND 4. (CITATION OMITTED)
THE SALES SLIPS DO, HOWEVER, QUALIFY AS "ITEMS". AN ITEM IS "ANY INSTRUMENT FOR THE PAYMENT OF MONEY EVEN THOUGH IT IS NOT NEGOTIABLE BUT DOES NOT INCLUDE MONEY". (CITATION OMITTED). THE SALES SLIPS ARE NON-NEGOTIABLE INSTRUMENTS EVIDENCING THE PAYMENT OF MONEY AND THEY ARE TREATED AS SUCH UNDER THE TERMS OF THE MERCHANT AGREEMENT.
AS THE SALES SLIPS ARE ITEMS WITHIN THE MEANING OF ARTICLE IV, THEN THE DEFENDANT BANK IS A DEPOSITARY BANK AND COLLECTING BANK FOR THE PURPOSE OF FURTHER CODE ANALYSIS. (CITATIONS OMITTED) 533 SO.2D AT 453.
A NEW YORK APPELLATE COURT HAS REFERRED TO A MERCHANT BANK IN THE TYPICAL MERCHANT BANK/MERCHANT CREDIT CARD RELATIONSHIP AS A DEPOSITORY BANK. SCHORR V. BANK OF NEW YORK, 458 N.Y.S. 2D 244, 246 (.Y. APP. DIV. 1983).
THERE IS LITTLE QUESTION THAT UNDER THE EXISTING SYSTEM BEFORE THE IMPLEMENTATION OF THE CONTRACT IN QUESTION, THE STATE TREASURER, AND THE STATE TREASURER ALONE, HAS STATUTORY AUTHORITY IN REGULATING THE "DEPOSITORY" AND "DEPOSITARY" RELATIONSHIPS BETWEEN STATE AGENCIES AND THE DEPOSITORIES SELECTED BY THE STATE TREASURER. FURTHERMORE, NO STATE AGENCY, OTHER THAN THE STATE TREASURER, HAS THE AUTHORITY TO SELECT A MERCHANT BANK ON ITS OWN AND ENTER INTO AN AGREEMENT ON ITS OWN FOR THE DEPOSIT OF PAPER CREDIT CARD SLIPS WITH THAT BANK. THIS IS SO BECAUSE 62 O.S. 71 CLEARLY VESTS IN THE STATE TREASURER THE EXCLUSIVE AUTHORITY IN SELECTING STATE TREASURY DEPOSITORIES AND REGULATING THE DEPOSITORY RELATIONSHIP BETWEEN STATE AGENCIES AND BANKS SELECTED AS DEPOSITORIES.
THIS DOES NOT END THE INQUIRY FOR PURPOSES OF THE PRESENT CONTRACT. THE PRESENT CONTRACT IS WITH A NON-BANK AND MUCH OF THE CONTRACT WILL BE IMPLEMENTED WITHOUT THE USE OF AN ACTUAL CREDIT CARD SLIP WHICH IS AN ITEM UNDER THE UNIFORM COMMERCIAL CODE. IN ESSENCE, UNDER THE CURRENT CONTRACT, RETRIEVER WILL ALSO PROCESS ELECTRONIC CHARGES WITHOUT THE USE OF A CREDIT CARD SLIP. THIS IS RELEVANT BECAUSE COURTS HAVE TREATED SUCH ELECTRONIC TRANSFERS DIFFERENTLY THAN TRANSACTIONS INVOLVING PAPER. NEARLY EVERY COURT AGREES THAT A PIECE OF PAPER WHICH ORDERS MONEY TO BE PAID IS AN "ITEM" UNDER THE UCC. FIRST UNITED BANK V. PHILMONT CORPORATION, SUPRA; HOUSTON CONTRACTING V. CHASE MANHATTAN BANK N.A., 539 F.SUPP. 247 (S.D. N.Y. 1982) (AN UNSIGNED TELEX WAS AN ITEM UNDER THE UCC); SHAW V. UNION BANK TRUST CO., 640 P.2D 953 (OKLA. 1981) (A SAVINGS WITHDRAWAL SLIP WAS AN ITEM UNDER THE UCCN) THE COURTS HAVE TAKEN A DIFFERENT VIEW WHEN WITH ELECTRONIC TRANSFERS. IN BRADFORD TRUST COMPANY OF BOSTON V. TEXAS AMERICAN BANK — HOUSTON, 790 F.2D 407 (10TH CIR. 1986) THE FIFTH CIRCUIT COURT OF APPEALS OBSERVED THAT THE UCC DOES NOT SPECIFICALLY APPLY TO WIRE TRANSFERS EXCEPT BY ANALOGY. TWO OTHER FEDERAL CIRCUIT COURTS OF APPEAL HAVE AGREED THAT THE SPECIFIC LANGUAGE OF THE UCC DOES NOT APPLY TO WIRE TRANSFERS, BUT THAT THE PRINCIPALS OF THE UCC CAN BE USED IN ANALYZING DISPUTES ARISING WITH WIRE TRANSFERS. EVRA CORP. V. SWISS BANK CORP., 673 F.2D 951 (7TH CIR. 1982); DELBRUECK CO. V. MANUFACTURER'S HANOVER TRUST CO., 609 F.2D 1047 (2ND CIR. 1979). IN POINT OF FACT, COURTS AND COMMENTATORS ALIKE HAVE STRUGGLED WITH DISPUTES ARISING WITH BOTCHED WIRE TRANSFERS OR WIRE TRANSFERS USED TO PERPETRATE FRAUDULENT TRANSACTIONS BECAUSE OF THE LACK OF DIRECTION FROM THE APPLICABLE STATUTES. THIS HAS LED SEVERAL JURISDICTIONS, INCLUDING OKLAHOMA, TO ADOPT A NEW ARTICLE 4A TO THE UNIFORM COMMERCIAL CODE ENTITLED "FUNDS TRANSFERS". OKLAHOMA'S LAW WAS JUST PASSED IN 1990 BUT WILL NOT BECOME EFFECTIVE UNTIL JULY 1, 1991. SEE 1990 OKLA. SESS. L., C. 110, 1 TO 42. WHEN THIS NEW ACT GOES INTO EFFECT A WHOLE HOST OF NEW TERMINOLOGY WILL APPLY TO MODERN BANKING AND ELECTRONIC FUNDS TRANSFERS IN THE STATE OF OKLAHOMA. THERE IS LITTLE QUESTION THAT WHEN THESE STATUTES GO INTO EFFECT THE FINANCIAL TRANSACTIONS UNDER THIS AGREEMENT WILL FALL WITHIN SOME OF THE PROVISIONS OF THE NEW STATUTES. FOR INSTANCE, RETRIEVER WILL APPARENTLY BE INVOLVED IN WHAT IS DEFINED AS "FUNDS TRANSFERS" UNDER THESE STATUTES. UNDER THESE NEW STATUTES AN "ORIGINATOR" (PRESUMABLY RETRIEVER) WILL SEND A "PAYMENT ORDER" (PRESUMABLY TO COLLECT THE AMOUNT OF CREDIT CARD CHARGES FROM WHICH THE STATE WILL RECEIVE PAYMENT) TO CONVERT THESE CHARGES INTO FUNDS PAYABLE TO THE BENEFICIARY (STATE OF OKLAHOMA). IN SUCH A FUNDS TRANSFER THE VARIOUS DEPOSITORY BANKS WHICH WILL RECEIVE CREDIT FOR THESE CREDIT CHARGES, WILL BE THE "BENEFICIARY'S BANK" UNDER THE NEW STATUTES. MOST OF THE APPLICABLE DEFINITIONS WILL APPEAR IN SECTIONS 4A-103 AND 4A-104 OF TITLE 12A. 62 O.S. 71 IS NOT THE ONLY OKLAHOMA STATUTE REFERRING TO THE STATE TREASURER'S ROLE IN THE PROCESS OF MAKING DEPOSITS. 62 O.S. 7.1 DEALS WITH AGENCY CLEARING ACCOUNTS. THIS SECTION OF LAW WAS AMENDED AT LEAST TWICE DURING THE MOST RECENT LEGISLATIVE SESSION. 1990 OKLA. SESS. L., C. 337, 12, P. 1788. THIS SECTION OF LAW ALSO ESTABLISHES THE DUTY OF MOST STATE AGENCIES, OFFICERS AND EMPLOYEES TO MAKE DEPOSITS INTO THESE AGENCY CLEARING ACCOUNTS AND AGENCY SPECIAL ACCOUNTS SUBPART B OF SECTION 7.1 PROVIDES IN PERTINENT PART AS FOLLOWS: (TEXT HERE)
IT IS QUITE CLEAR FROM SUBSECTION B THAT RECEIPTS OF ANY KIND OR NATURE MUST BE DEPOSITED INTO THE AGENCY CLEARING ACCOUNT OR AGENCY SPECIAL ACCOUNT REGARDLESS OF THE SOURCE, OR METHOD OF PAYMENT. THIS NOTION IS FURTHER BOLSTERED BY SUBPART D WHICH DISCUSSES THE FORM OF PAYMENT WHICH IS DEPOSITED. THAT SUBSECTION PROVIDES IN PERTINENT PART AS FOLLOWS: (TEXT HERE)
WHEN READING 62 O.S. 7.1 TOGETHER WITH 62 O.S. 71, BOTH OF TITLE 62, IT IS ABUNDANTLY CLEAR THAT THE LEGISLATURE HAS SEEN FIT TO GIVE THE AUTHORITY TO THE TREASURER OVER THE DEPOSIT OF STATE FUNDS AND TO GIVE THE TREASURER THE EXCLUSIVE AUTHORITY TO SELECT THOSE INSTITUTIONS WITH WHICH DEPOSITS ARE MADE. THE WISDOM OF THIS SHOULD BE ABUNDANTLY CLEAR. IT IS THE STATE TREASURER WHO HAS CUSTODY OF STATE FUNDS. IT IS THE STATE TREASURER WHO IS RESPONSIBLE TO MANAGE THIS MONEY AND TO DECIDE HOW SUCH FUNDS SHOULD BE INVESTED. IT IS CRITICAL THAT THE STATE TREASURER HAVE THE EXCLUSIVE RESPONSIBILITY OVER THE DEPOSITING FUNCTION SO THAT THE CUSTODY AND MANAGEMENT AND INVESTMENT OF SUCH FUND CAN BE PROPERLY COORDINATED.
IT IS MY VIEW THAT THE CREDIT CARD SERVICES AGREEMENT AND THE PROPOSAL TO SUBMIT CREDIT CARD CHARGES FOR ULTIMATE PAYMENT DOES NOT FALL WITHIN THE SPECIFIC WORDING OF SECTION 71. IT DOES HOWEVER, COME WITHIN THE SPECIFIC WORDING OF SECTION 7.1 DEALING WITH STATE AGENCIES' DUTIES TO DEPOSIT ALL FORMS OF REMITTANCE WHICH ARE UNIFORMLY HONORED AND THE DEPOSITS OF ALL MONIES OF EVERY KIND" RECEIVED BY THAT STATE AGENCY. IN POINT OF FACT IT IS SIMPLY TECHNOLOGY WHICH ALLOWS THIS TYPE OF AGREEMENT TO BYPASS THE TRADITIONAL DEPOSIT METHOD FOR CHECKS, DRAFTS, CASH AND EVEN CREDIT CARD SLIPS. RATHER THAN DEALING DIRECTLY WITH THE DESIGNATED DEPOSITORY THE CURRENT CREDIT CARD SERVICES AGREEMENT WITH RETRIEVER WILL ALLOW ITEMS TO BE SUBMITTED ELECTRONICALLY OR BY PAPER DIRECTLY TO A NON-BANK FOR ULTIMATE PAYMENT TO THE STATE AGENCY.
THE QUESTION THEN BECOMES WHETHER OR NOT SUCH A CONTRACT FITS WITHIN THE SPIRIT OF SECTION 71. IT IS MY VIEW THAT IT DOES BECAUSE OF THE OVERRIDING INTENT EXPRESSED BY THE LEGISLATURE TO EFFECTIVELY COORDINATE THE DEPOSITS OF STATE FUNDS SO THAT ONE OFFICE CAN MANAGE THE ACCEPTANCE, MANAGEMENT AND INVESTMENT OF SUCH FUNDS IN A COORDINATED MANNER. IT IS MY VIEW THAT THE STATE TREASURER HAS THE AUTHORITY UNDER SECTION 71 TO ENTER INTO A CREDIT CARD SERVICES AGREEMENT MUCH LIKE THE ONE ENTERED INTO BY THE OFFICE OF STATE FINANCE.
WE THEN MUST LOOK TO SEE IF THERE IS ANY CONFLICTING AUTHORITY POSSESSED BY THE OFFICE OF STATE FINANCE OVER SUCH AN AGREEMENT. IN A NUTSHELL THE OFFICE OF STATE FINANCE, THROUGH ITS DIRECTOR HAS PRIMARY AUTHORITY OVER THE PAYMENT OF STATE FUNDS AND THE ACCOUNTING FOR SUCH FUNDS WITHIN THE VARIOUS FUNDS OF STATE AGENCIES. THE PRIMARY ROLE OF THE OFFICE OF STATE FINANCE IS IN THE BUDGETING FUNCTION TO INSURE THAT THE STATE AND ITS AGENCIES DO NOT OVERSPEND THE AMOUNT APPROPRIATED BY THE LEGISLATURE AND ALLOCATED BY THE OFFICE OF STATE FINANCE UNDER THE STATE BUDGET LAW. THE OFFICE OF STATE FINANCE HAS BEEN GIVEN OTHER AUTHORITY OVER MATTERS NOT GERMANE TO THIS OPINION SUCH AS THE COORDINATION OF STATE AGENCY DATA PROCESSING PLANNING (62 O.S. 41.5(A) (1990) ET SEQ.), AND THE ACQUISITION OF TELECOMMUNICATION EQUIPMENT (62 O.S. 41.5(J)). THE ONLY APPARENT ROLE OF THE OFFICE OF STATE FINANCE IS TO RECEIVE NOTICE OF THE DEPOSITS FROM THE STATE TREASURER. 62 O.S. 341.19(A) (1990). 1989 OKLA. SESS. LAWS, C. 367, 1).
IT IS VERY APPARENT FROM THE INTENT OF ALL THESE STATUTES TAKEN AS A WHOLE THAT THE LEGISLATURE HAS GIVEN TO THE STATE TREASURER THE AUTHORITY TO ACCEPT AND REGULATE THE RECEIPT OF STATE FUNDS, THE MANAGEMENT OF THESE FUNDS AND THE INVESTMENT OF THESE FUNDS. THE STATE TREASURER IS DUTY BOUND TO ADVISE THE OFFICE OF STATE FINANCE OF THESE RECEIPTS. THEREAFTER THE STATE PAYMENT FUNCTION IS PRIMARILY OVERSEEN BY THE OFFICE OF STATE FINANCE. IN MY VIEW THERE IS NO AUTHORITY, EXPRESSED OR IMPLIED, POSSESSED BY THE OFFICE OF STATE FINANCE TO ENTER INTO A CREDIT CARD SERVICE AGREEMENT WHICH INFRINGES ON THE STATE TREASURER'S EXCLUSIVE STATUTORY DUTY TO REGULATE THE RECEIPT AND DEPOSIT OF STATE MONIES.
THIS OFFICE CLEARLY DOES NOT HAVE THE AUTHORITY TO VOID A CONTRACT. IT IS MY RECOMMENDATION THAT THE STATE TREASURER RATIFY THE CURRENT CONTRACT WITH RETRIEVER FOR THE REMAINDER OF THIS CONTRACT TERM. IT IS FURTHER MY RECOMMENDATION THAT THE TREASURER SEE TO IT THAT A SIMILAR CONTRACT GOES OUT FOR BID OR A REQUEST FOR PROPOSAL FOR NEXT FISCAL YEAR. THIS TYPE OF CONTRACT COULD SAVE THE STATE A GREAT DEAL OF MONEY CURRENTLY SPENT ON FEES CHARGED BY MERCHANT BANKS IN THE PROCESSING OF CREDIT CARDS.
(THOMAS L. SPENCER)